UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

CHRISTIAN DELGADO,

              Petitioner,

   v.

UNITED STATES OF AMERICA,

              Defendant.

**DECISION AND ORDER**

6:17-CR-6060 EAW
6:18-CV-6698 EAW

---

## I.    BACKGROUND

On or about October 18, 2017, petitioner Christian Delgado ("Petitioner") pleaded guilty pursuant to a plea agreement (Dkt. 35)[1] to a two-count Information (Dkt. 34) charging violations of 21 U.S.C. § 841(a)(1) (possession of cocaine with intent to distribute) and 18 U.S.C. § 922(g)(1) (possession of firearm and ammunition by a convicted felon). On January 22, 2018, the Court sentenced Petitioner to a term of 151 months incarceration on each of Counts 1 and 2 to run concurrently, and a three-year term of supervised release. (Dkt. 44). On January 29, 2018, Petitioner was re-sentenced to a term of 151 months incarceration on Count 1, and 120 months on Count 2 to run concurrently to Count 1, for a total term of 151 months imprisonment, as well as a three-year term of supervised release. (Dkt. 46). That sentence was consistent with the Rule 11(c)(1)(C) plea agreement and fell within the range of the appellate/collateral attack waiver contained in the plea agreement (*i.e.*, 151 to 188 months incarceration). (*See* Dkt.

---

[1]    All references to the docket in the instant Decision and Order are to the docket in Criminal Action No. 6:17-CR-6060.

35 at ¶¶ 11, 12, 20). Petitioner did not pursue a direct appeal of the Court's sentence. Petitioner was represented at that time by Assistant Public Defender Steven G. Slawinski.

On or about September 25, 2018, Petitioner filed a *pro se* motion pursuant to 28 U.S.C. § 2255, seeking to vacate, set aside, or correct the sentence. (Dkt. 49). The government filed its answer on March 19, 2019 (Dkt. 57), and Petitioner filed a reply on April 16, 2019 (Dkt. 58). In that reply, Petitioner raised a new argument that he should have been appointed an interpreter for purposes of his court proceedings because English is not his native language. (*Id.* at 2).

Because Petitioner raised new issues in his reply papers, the Court issued an Order on December 12, 2019, requesting further briefing from the government. (Dkt. 59). On January 7, 2020, the government filed a motion seeking an order declaring that Petitioner waived the attorney-client privilege with respect to the claims of ineffective assistance of counsel raised in the § 2255 motion and requiring Petitioner's former counsel to file an affidavit with respect to Petitioner's claims of ineffective assistance of counsel. (Dkt. 60). The Court initially granted this motion (Dkt. 61), but subsequently revisited the issue and stayed any requirement that Petitioner's former counsel file an affidavit (Dkt. 63).

The government filed a sur-reply addressing the new issues raised in Petitioner's reply on February 28, 2020. (Dkt. 64).

## II. DISCUSSION

### A. Legal Standard

A prisoner in federal custody may challenge the validity of his sentence by filing a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2255, to vacate, set aside, or

correct his sentence. *See* 28 U.S.C. § 2255(a). "Section 2255 provides relief in cases where the sentence: (1) was imposed in violation of the U.S. Constitution or the laws of the United States; or (2) was entered by a court without jurisdiction to impose the sentence; or (3) exceeded the maximum detention authorized by law; or (4) is otherwise subject to collateral attack." *Adams v. United States*, 372 F.3d 132, 134 (2d Cir. 2004) (citing 28 U.S.C. § 2255)).

In reviewing a *pro se* petition for habeas corpus, the Court must be mindful that "[a] document filed *pro se* is to be liberally construed, and a *pro se* [pleading], however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotations and citations omitted); *see also Williams v. Kullman*, 722 F.2d 1048, 1050 (2d Cir. 1983) ("[D]ue to the *pro se* petitioner's general lack of expertise, courts should review habeas petitions with a lenient eye. . . .").

**B.     Merits of Petitioner's Claims**

Petitioner's plea agreement provides that he "knowingly waives the right to appeal and collaterally attack any component of a sentence imposed by the Court" within or less than 151 to 188 months imprisonment, a fine of $30,000 to $1,000,000, and a period of supervised release of three years. (Dkt. 35 at 7, 10). As noted above, the sentence imposed in this case is within the range of the appellate/collateral attack waiver contained in the plea agreement.

"A defendant's knowing and voluntary waiver of the right to appeal or collaterally attack his conviction and/or sentence is enforceable." *Sanford v. United States*, 841 F.3d

- 3 -

578, 580 (2d Cir. 2016). There are a limited set of circumstances under which a court can set aside a collateral attack wavier, "such as (1) when the waiver was not made knowingly, voluntarily, and competently, (2) when the sentence was imposed based on constitutionally impermissible factors, such as ethnic, racial or other prohibited biases, (3) when the government breached the plea agreement, or (4) when the sentencing court failed to enunciate any rationale for the [petitioner's] sentence, thus amounting to an abdication of the judicial responsibility subject to mandamus." *Id.* Additionally, such a waiver is unenforceable if it "was the result of ineffective assistance of counsel[.]" *United States v. Monzon*, 359 F.3d 110, 119 (2d Cir. 2004).

Here, reading his submissions liberally in light of his *pro se* status, Petitioner has argued that: (1) he was unable to understand the plea proceedings due to his lack of fluency in English, and counsel's failure to recognize this fact and obtain an interpreter amounted to ineffective assistance; (2) counsel was ineffective because Petitioner was not shown the actual plea agreement, but instead was shown an earlier version with a lower sentencing range; and (3) counsel was ineffective by incorrectly advising Petitioner that he was a career offender. The Court has considered these arguments and, for the reasons set forth below, concludes that the collateral attack waiver was entered into knowingly, voluntarily, and competently, and with the effective assistance of counsel, and is thus enforceable.

### 1. Ability to Speak and Understand English

First, as to Petitioner's ability to speak and understand English, the Court explored this issue with Petitioner during the plea hearing. Specifically, the Court asked Petitioner, "Can you read, write, and understand English?" to which he replied, "Yes." (Dkt. 52 at 4).

The Court further asked Petitioner whether he had been educated in the United States or Puerto Rico (where he was born), to which he replied, "Both, ma'am." (*Id*.). More specifically, Petitioner advised the Court that he had attended school in the United States from the sixth grade to the twelfth grade. (*Id*.).

As the Supreme Court has explained, "the representations of the defendant, his lawyer, and the prosecutor at" a plea hearing, "as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977). This is so because "[s]olemn declarations in open court carry a strong presumption of verity." *Id*.; *see also United States v. Torres*, 129 F.3d 710, 715 (2d Cir. 1997) (noting that "statements at a plea allocution carry a strong presumption of veracity"). The presumption that Petitioner was being truthful when he told the Court that he could read, write, and understand English during the plea hearing has not been overcome in this case.

Contrary to Petitioner's current argument that he answered all of the Court's questions "with the monosyllabic 'yes' or 'yes, mam's indicative of [his] command of the language" and "[n]ot a single word beyond that" (Dkt. 58 at 5), Petitioner engaged intelligently and understandably with the Court in English during the plea hearing. For example, when the Court asked Petitioner whether he had ever been treated for any mental or emotional disorders, Petitioner asked clarifying questions and explained to the Court, in English, that he had been on medication for depression and anxiety when he was a child, and that he had last taken the medication when he witnessed his foster mother dying in

front of him. (Dkt. 52 at 4-5). As a further example, Petitioner answered the question "Where were you born, Mr. Delgado?" with "I was born in Puerto Rico." (*Id*. at 4).

Further, at the plea hearing, the Court expressly asked Petitioner "Is there any reason that you're not able to understand what's happening here in court today?" and he replied "I understand." (*Id*. at 6). Petitioner's counsel advised the Court that he had been representing Petitioner for over a year and had never had any concerns about Petitioner's ability to understand him, and that he had no concerns about Petitioner's "ability to understand what's going on today." (*Id*.).

Petitioner also conversed with the Court in English at the sentencing. For example, when asked if there was anything he would like to say before he was sentenced, he explained in English that he apologized for his actions, he asked the Court to "please take it lightly on me," he indicated that he "did learn my lesson," and while acknowledging that he "made many mistakes in my life," he expressed hope that one day he would be forgiven. (Dkt. 56 at 6). At no time did it appear to the Court that Petitioner was struggling to understand the proceedings, nor did Petitioner ever request an interpreter.

The presentence investigation report ("PSR") prepared in this matter confirmed that Petitioner had attended high school in Boston, Massachusetts. (Dkt. 39 at 18). The PSR further indicated that Petitioner completed an asbestos removal course in Rochester, New York, and that he had previously been employed as the "Assistant Manager of Sales" at a retail store in Rochester, New York. (*Id*. at 19).

While Petitioner asserts that the Bureau of Prisons ("BOP") has concluded that he should be placed in a Spanish-language GED program and that this is evidence of his lack

- 6 -

of understanding of English (*see* Dkt. 58 at 2, 6), Petitioner has failed to provide the Court with any supporting documentation that would confirm this assertion or explain what standards the BOP applied in reaching this determination.  Even accepting Petitioner's representation as true, the mere fact that the BOP placed Petitioner in a GED program conducted in his native language does not overcome the strong presumption of truth in his statements at the plea hearing.

Petitioner told the Court at his plea hearing, under penalty of perjury, that he could read, write, and understand English.  Nothing in the record before the Court overcomes the strong presumption that Petitioner was being truthful when he made that representation.  It thus necessarily follows that the lack of an interpreter does not render Petitioner's plea agreement unknowing or involuntary, nor can counsel be faulted for not having obtained an interpreter.  *See, e.g., Khan v. United States*, No. 07 CR. 711 LAP, 2014 WL 2111677, at *8 (S.D.N.Y. Apr. 28, 2014)  (rejecting argument that plea was not knowing and voluntary: "[A] general review of the record in both the underlying criminal action and this action indicates that Petitioner understands English.  Petitioner never requested an interpreter at any of his appearances and appeared at all times to understand the proceedings in English before him and the questions posed to him in English.  These facts further indicate that Petitioner can read, write, and understand English. In light of Petitioner's statements and conduct throughout these proceedings, there is no basis for Petitioner's claim that he does not speak, read, and understand English."); *Ebrahim v. LeConey*, No. 10-CV-6397 MAT, 2012 WL 6155655, at *8 (W.D.N.Y. Dec. 11, 2012) (rejecting

ineffective assistance of counsel claim based on failure to obtain interpreter where the record demonstrated that the petitioner could speak and understand English).

### 2.     Effectiveness of Counsel

The Court further finds no merit in Petitioner's other claims that his former counsel was ineffective. "The Sixth Amendment requires effective assistance of counsel at critical stages of a criminal proceeding." *Lafler v. Cooper*, 566 U.S. 156, 165 (2012). "Pursuant to the well-known two-part test of *Strickland v. Washington*, 466 U.S. 668 (1984), a habeas petitioner alleging ineffective assistance of counsel 'must demonstrate (1) that his counsel's performance fell below what could be expected of a reasonably competent practitioner; and (2) that he was prejudiced by that substandard performance.'" *Woodard v. Chappius*, 631 F. App'x 65, 66 (2d Cir. 2016) (quoting *Pearson v. Callahan*, 555 U.S. 223, 241 (2009)). A court need not address both components of the *Strickland* inquiry if a petitioner makes an insufficient showing on one. *Garner v. Lee*, 908 F.3d 845, 861 (2d Cir. 2018).

Here, as set forth above, Petitioner asserts ineffective assistance of counsel based on his claims that (1) counsel did not show him the actual plea agreement and (2) counsel incorrectly advised him that he was a career offender. As to the first of these arguments, Petitioner's factual assertion is flatly contradicted by the record. At the plea hearing, the Court went through the provisions of the plea agreement in detail, including the potential sentence. Petitioner then confirmed, under penalty of perjury, that he had read the plea agreement, that he had had a full opportunity to discuss it with counsel, and that he fully agreed with its contents. (*Id*. at 24-25). Petitioner's current self-serving assertion that he

never saw the plea agreement and that he did not understand its term is insufficient to overcome the strong presumption that he was telling the truth during the plea hearing. The record in this case simply does not support Petitioner's assertion that counsel failed to show him an accurate copy of the plea agreement.

As to Petitioner's second contention, this argument fails because counsel reasonably advised Petitioner that he was a career offender for purposes of the Sentencing Guidelines. For a defendant to qualify as a career offender under § 4B1.1 of the Sentencing Guidelines, it is necessary that: (1) the defendant was at least 18 years old at the time he committed the offense of conviction; (2) the offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

It is clear that the first two elements were satisfied in this case. Defendant was born in 1989 and was thus at least 18 years old at the time of the criminal conduct underlying the instant matter which occurred in 2016. Possession with intent to distribute cocaine—one of the offenses of conviction—is a controlled substance offense. *United States v. Richardson*, 958 F.3d 151, 155 (2d Cir. 2020), *cert. denied*, 141 S. Ct. 423, 208 L. Ed. 2d 124 (2020).

As to the third element, the record reflects that Defendant had two prior felony convictions: a 2009 conviction for unlawful possession of a sawed-off shotgun in Massachusetts and a 2014 conviction for criminal possession of a controlled substance in the third degree in New York. (Dkt. 39 at 11). With respect to the first of these convictions, "crime of violence" includes "the use or unlawful possession of a firearm described in 26

U.S.C. § 5845(a)[.]" U.S.S.G. § 4B1.2(a)(2). In turn, 26 U.S.C. § 5845(a) defines "firearm" as including "a weapon made from a shotgun if such weapon as modified has an overall length of less than 26 inches or a barrel or barrels of less than 18 inches in length." Massachusetts law defines a "sawed-off shotgun" as "any weapon made from a shotgun, whether by alteration, modification or otherwise, if such weapon as modified has one or more barrels less than 18 inches in length or as modified has an overall length of less than 26 inches." Mass. Gen. Laws Ann. Ch. 140, § 121. It was thus reasonable for counsel to conclude that Defendant's 2009 Massachusetts conviction for unlawful possession of a sawed-off shotgun was a crime of violence for purposes of the career offender determination

As to Petitioner's second conviction, the Court acknowledges that the law is not entirely settled as to whether a New York conviction for criminal possession of a controlled substance in the third degree—that is, a violation of New York Penal Law § 220.16—constitutes a controlled substance offense for purposes of the career offender determination. However, "[t]he Court need not definitively resolve this question," because the relevant inquiry is only "whether, in advising [Petitioner] that he qualified as a 'career offender' . . . [Petitioner's] defense attorney's performance fell below an objective standard of reasonableness." *Martinez v. United States*, No. 14-CR-79, 2020 WL 435364, at *4 (W.D.N.Y. Jan. 28, 2020) (quotation omitted). In that regard, it is relevant that "[a]t the time of [Petitioner's] guilty plea, several courts had analyzed New York Penal Law § 220.16(1) [the relevant statutory subsection in this case] . . . and held that a violation of that statute was a 'controlled substance offense' under the Guidelines." *Id*. at *4. Under

these circumstances, the Court cannot find that counsel's conclusion that this conviction constituted a controlled substance offense for purposes of the career offender determination was objectively unreasonable. *See id.* ("[T[his Court finds that [the petitioner's] attorney was not ineffective in advising [the petitioner] that he qualified as a 'career offender' under the Guidelines. . . .  In fact, . . . a violation of New York Penal Law § 220.16(1) was and is a controlled substance offense under the Guidelines."); *see also United States v. Sadler*, No. 16-CR-0297-8 (AMD), 2021 WL 2037863, at *5 (E.D.N.Y. May 21, 2021) ("Counsel's decision not to challenge the career offender enhancement was not an 'unreasonable' strategy that deprived the defendant of his Sixth Amendment rights" where "at the time, . . . several courts in this circuit had unequivocally adopted" the position that the conviction at issue was a controlled substance offense).

For all these reasons, the Court finds that Petitioner has not demonstrated ineffective assistance of counsel, nor has he demonstrated that the plea agreement (including the collateral attack waiver) was not entered into knowingly, voluntarily, and competently. Accordingly, there is no basis for the Court not to enforce the collateral attack waiver. *See Monzon*, 359 F.3d at 119.  The Court finds Petitioner's § 2255 motion is barred by the collateral attack waiver and must be dismissed.

### III.    CONCLUSION

For the foregoing reasons, the Court denies Petitioner's § 2255 motion. (Dkt. 49). The Clerk of Court is directed to close Civil Action No. 18-cv-6698.

The Court declines to issue a certificate of appealability because Petitioner has failed to make a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c).

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:   November 29, 2021
         Rochester, New York